IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SEAN PATRICK O'GEARY,

    Petitioner,

vs.

JOHN FAYRAM, Warden Anamosa
State Penitentiary,

    Respondent.

No. C08-0004

REPORT AND RECOMMENDATION

_____

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 3
    A.    Trial Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    State Post-Conviction Relief . . . . . . . . . . . . . . . . . . . 4
    D.    Petition for a Writ of Habeas Corpus . . . . . . . . . . . . . . . 5

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.    Standard of Review Under 28 U.S.C. § 2254(d) . . . . . . . . . . . 8
        1.   Requirements Under 28 U.S.C. § 2254(d)(1) . . . . . . . . . . . 9
        2.   Requirements Under 28 U.S.C. § 2254(d)(2) . . . . . . . . . . . 11
    B.    Exhaustion Requirement . . . . . . . . . . . . . . . . . . . . . 12
    C.    Ineffective Assistance of Counsel . . . . . . . . . . . . . . . . 15

V.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    A.    Ineffective Assistance of Counsel . . . . . . . . . . . . . . . . 17
        1.   Did Counsel Provide Ineffective Assistance by Failing to
            Request a Mistrial After Detective Slezak's Testimony? . . . . 18
        2.   Did Counsel Provide Ineffective Assistance by Failing to
            Object to the Line of Questioning About Mercedes' Burn? . . 23

       *3.*      *Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument?* . . . . . . . . . . 24

             *a.*      *Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument Statements Regarding Mercedes' Manner of Death?* . . . 25

             *b.*      *Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument Statements Regarding the Credibility of O'Geary's Expert Witnesses?* . . . . . . . . . . . . . . . . . . . . . . . 26

       *4.*      *Did Counsel Provide Ineffective Assistance by Failing to Prevent the Court from Using Blough's Deposition in Place of Her Live Testimony?* . . . . . . . . . . . . . . . . . . . . . . . . 28

    *B.*     *Favorable Concessions to Blough* . . . . . . . . . . . . . . . . . . . . . . 32

    *C.*     *Other Newly Discovered Evidence* . . . . . . . . . . . . . . . . . . . . . 34

    *D.*     *Expert Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*VI.*    *CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . 36

*VII.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*VIII.*  *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## I. INTRODUCTION

On January 14, 2008, Petitioner Sean Patrick O'Geary ("O'Geary") filed a Petition for Writ of Habeas Corpus (docket number 1) pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Iowa. In his petition, O'Geary challenges the legality of his conviction for first degree murder.

On June 19, 2009, Chief Judge Linda R. Reade referred this matter to the undersigned Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is before the Court on O'Geary's brief regarding his petition for a writ of habeas corpus (docket number 29), Respondent's brief (docket number 33), and O'Geary's reply brief (docket number 36).

## II. PROCEDURAL BACKGROUND

### A. Trial Matters

On January 9, 1998, O'Geary was charged by trial information in the Iowa District Court for Linn County ("Iowa District Court") with first-degree murder in violation of Iowa Code sections 707.1 and 707.2(5) (1997). A jury trial began on July 27, 1998. At the trial, Detective Wayne Slezak of the Cedar Rapids Police Department testified about the murder investigation. Specifically, he testified that O'Geary retained counsel shortly after the victim's death. At sidebar, counsel raised a Fifth Amendment objection to Slezak's testimony, and the Iowa District Court judge ordered that the answer be stricken from the record and admonished the jury to disregard the answer.

O'Geary also personally testified at his trial. During the prosecution's cross-examination, the prosecutor engaged in a series of questions about a burn on the victim's hand that she obtained while alone with O'Geary. Even though neither party disputed the fact that the victim burned her hand in the oven, the prosecutor asked O'Geary if he burned the victim with a cigarette. Counsel did not object to the question.

In addition, the Iowa District Court subpoenaed the victim's mother, Jessica Blough ("Blough"), to testify at the trial. However, she moved to quash the subpoena on Fifth Amendment grounds. The court granted her motion, and during an in-chambers meeting, the attorneys agreed to use parts of Blough's deposition in place of calling her as a witness. O'Geary was not present at this meeting.

Finally, during closing arguments, the prosecutor told the jury that the victim's death was caused "in some manner that is so hard to comprehend and so ugly that we really don't want to try to even describe it to you." Trial Tr. vol. IV, 1618 (Aug. 7, 1998). In addition, the prosecutor made comments regarding the credibility of O'Geary's expert medical witnesses. Counsel did not object to either of the prosecutor's remarks. On August 10, 1998, the jury found O'Geary guilty of first-degree murder. On October 16, 1998, the Iowa District Court sentenced O'Geary to life in prison.

## B. Direct Appeal

On October 19, 1998, O'Geary filed a notice of appeal. On appeal, O'Geary argued that: (1) his Fifth Amendment right to silence was violated by Detective Slezak's testimony; (2) he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments when counsel failed to move for a mistrial in response to Slezak's testimony and when counsel failed to insist that the court should require Blough to testify; (3) he was denied due process when the court excluded testimony of Blough's former roommate; (4) he was denied his right to a fair trial when the court admitted expert testimony which was unduly prejudicial; (5) his due process rights were violated when the court reread the prosecutor's questions as opposed to having the court reporter reread the questions; (6) the verdict was contrary to the weight of the evidence; (7) his Sixth Amendment rights were violated when the court denied counsel's request to have O'Geary examined by an expert; (8) he was prejudiced by prosecutorial misconduct when the prosecutor asked O'Geary whether he had ever burned the victim with a cigarette; and (9) the cumulative effect of all the errors was so prejudicial that O'Geary was denied a fair and impartial trial in violation of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution as well as other portions of the Iowa Constitution. *See State v. O'Geary*, 1999 WL 1255737 (Iowa Ct. App. 1999). The Iowa Court of Appeals affirmed the Iowa District Court's judgment on December 27, 1999. On March 3, 2000, the Iowa Supreme Court affirmed the Court of Appeals' judgment, but it also preserved O'Geary's ineffective assistance of counsel claim for possible post-conviction relief action. Procedendo issued on March 3, 2000.

## C. State Post-Conviction Relief

On February 12, 2001, O'Geary filed an application for post-conviction relief pursuant to Iowa Code chapter 822 in the Iowa District Court. In his application for post-conviction relief, O'Geary argued that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when: (1) trial counsel breached an essential duty by failing to insist

that the court should require Blough to testify; and (2) when trial counsel failed to move for a mistrial following Detective Slezak's testimony. O'Geary further argued that trial counsel should have done the following: (1) objected to Jury Instruction No. 19; (2) requested a hearing to determine which evidence used by the prosecutor was derived from suppressed evidence; (3) asserted that there was insufficient evidence to support the jury verdict; (4) sought a mistrial when the court declined to question jurors regarding the extent of their exposure to pre-trial publicity; (5) called a medical expert and/or biomechanical engineer in response to the prosecutor's expert witnesses; and (6) investigated any cooperation between the State and Blough. In addition, O'Geary argued that his appellate counsel was ineffective in failing to raise the above six issues on appeal. O'Geary also asserted that the Chapter 707.2(5) enhancement of murder to first-degree murder is unconstitutional. On March 21, 2006, the Iowa District Court denied O'Geary's application for post-conviction relief. *See O'Geary v. State*, LACV039443 (Linn County Dist. Ct. 2006). An application to amend the court's findings and conclusions of law was summarily denied on April 26, 2006.

On May 23, 2006, O'Geary filed a notice of appeal. On October 24, 2007, the Iowa Court of Appeals affirmed the denial of O'Geary's application for post-conviction relief. *See O'Geary v. State*, 2007 WL 3085698 (Iowa Ct. App. 2007). The Iowa Supreme Court denied O'Geary's request for further review of the Iowa Court of Appeals decision. Procedendo issued on December 28, 2007. *See* Plaintiff's Brief at 5 (Procedendo not provided in exhibits).

### D. *Petition for a Writ of Habeas Corpus*

On January 14, 2008, O'Geary filed the instant petition for a writ of habeas corpus. In his petition, O'Geary asserts the following grounds as a basis for relief under 28 U.S.C. § 2254.

> **Ground One:** Trial and appellate counsel in [O'Geary's] state criminal proceeding rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments . . .

**Ground Two:** Evidence newly discovered after the O'Geary jury verdict disclosed favorable concessions to [Blough] by the State . . .

**Ground Three:** Under federal due process, Chapter 822.2(4), a state postconviction legislative remedy entitles a petitioner to the vacation of a conviction or a sentence in the interest of justice whenever it is shown by Petitioner there exists material facts not previously presented or heard . . .

**Ground Four:** [O'Geary] was denied his right to a fair trial when the [c]ourt admitted expert testimony which was unduly prejudicial and went to the ultimate issue of the case . . .

Plaintiff's Petition at 15-16. On March 28, 2008, Respondent filed an answer to the petition. On November 25, 2008, O'Geary filed a brief on the merits. On January 13, 2009, Respondent filed a responsive brief. On February 17, 2009, O'Geary filed a reply brief.

### III. FACTUAL BACKGROUND

O'Geary was dating Blough at the time of the death of Blough's two year old daughter, Mercedes[1], on January 6, 1998. Around 5:00 p. m. on Friday, January 2, 1998, Blough and O'Geary picked Mercedes up from Blough's grandparents'[2] home, where Mercedes and Blough both lived. Blough's grandmother testified that Mercedes had a burn on her hand and a small bruise on her thigh when she left their home that night. O'Geary and Blough took Mercedes to O'Geary's home to spend the weekend together. At the time, Mercedes was recovering from the flu, and Blough thought she might be catching it as well. Blough and Mercedes went to bed early Friday night, and Blough slept in on the morning of Saturday, January 3, 1998.

---

[1] Mercedes Blough is often referred to as "Sadie."

[2] Blough's grandparents are Dale and Charlotte Blough. They are often referred to as Mercedes' grandparents in the briefs and record. However, they are Mercedes' great-grandparents.

When she woke up, Blough found O'Geary and Mercedes together in O'Geary's living room. O'Geary told Blough that Mercedes fell and hit her head that morning. They all spent Saturday at O'Geary's home. Throughout the day Mercedes still experienced flu symptoms including vomiting. Mercedes went to bed around 9:30 p.m. Later that evening, O'Geary and Blough heard a loud bang from upstairs where Mercedes was sleeping. O'Geary checked on her and found Mercedes climbing back into the playpen where she slept.

On Sunday, January 4, 1998, Blough again slept in. O'Geary testified that he took Mercedes downstairs with him that morning. He also testified that Mercedes' arms and legs were not moving and she was "not with it."[3] O'Geary claimed he tried to feed Mercedes, but she would not take the bottle. He also claimed that he tried to play with Mercedes by biting her. When Blough woke up, O'Geary told her that Mercedes was not looking well. He further told her that Mercedes had vomited on herself, so he gave her a shower. Blough responded by giving Mercedes a suppository. Mercedes continued to vomit throughout the day Sunday.

On Sunday afternoon, the three traveled to a grocery store and pharmacy. At this point, Blough had decided that Mercedes was dehydrated from the flu. A friend of O'Geary's, Seth Skelton, testified that he saw them at the pharmacy. He said he thought Mercedes was sleeping, but that he did hear her whine a little. Another acquaintance, Karyn Walter, testified that she saw them around 3:00 p.m. Sunday. She said Mercedes' head was wobbly and O'Geary needed to support it as he held her. Blough explained that Mercedes was so sick, she couldn't even hold up her head. Walter advised Blough to take Mercedes to a doctor.

Later on Sunday, the three went to O'Geary's sister's home to watch a football game. Mercedes was barely responsive while at the sister's home. However, O'Geary

_____

[3] *See* Plaintiff's Brief at 7.

mentioned that Mercedes was making stretching motions that he later described as convulsions. O'Geary and Blough picked up dinner on their way home. When they arrived at home, O'Geary noticed that Mercedes was making more stretching motions, so he tried to give her more Pedialyte. He also noticed she had a fever, so he went to the store to purchase a thermometer.

When he returned home, Mercedes was unresponsive, her eyes were turning blue, and she had stopped breathing. O'Geary suggested that Blough call her parents for help. She refused and instead called an ambulance at 8:45 p.m. The ambulance transported her to St. Luke's Hospital, during which time she was unable to breathe on her own. The emergency medical technician with the ambulance noted that Mercedes' pupils were fixed and dilated, which he later testified are symptoms of brain damage.

Mercedes died two days later on Tuesday, January 6, 1998. The autopsy showed that Mercedes died from head injuries. The State prosecuted O'Geary for murder under the theory that Mercedes died due to O'Geary's abuse. O'Geary was convicted of first degree murder and is currently serving a sentence of life in prison.

## IV. STANDARDS OF REVIEW

### A. Standard of Review Under 28 U.S.C. § 2254(d)

"A state prisoner may seek a writ of habeas corpus in federal court if his [or her] confinement violates the federal Constitution or federal law." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001) (citing 28 U.S.C. § 2254(a)). "Federal courts are 'bound by the AEDPA[4] to exercise only limited and deferential review of underlying state court decisions' in habeas corpus cases." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004)); *see also Taylor v. Roper*, 561 F.3d 859, 862 (8th Cir. 2009); 28 U.S.C. § 2254.[5] Federal habeas corpus

---

[4] AEDPA is an acronym for the Antiterrorism and Effective Death Penalty Act.

[5] AEDPA amended the federal habeas corpus statute, 28 U.S.C. § 2254, in 1996.
(continued...)

relief may only be granted if one or both of two conditions is satisfied. *Ryan*, 387 F.3d at 790. These two conditions are set forth in 28 U.S.C. § 2254(d); which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, "[28 U.S.C. §] 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact – and treats each in separate subparagraphs." *Weaver*, 241 F.3d at 1029. Claims of legal error are governed by the first subparagraph, and claims of factual error fall within the second subparagraph. *Id.* at 1029-30.

### 1.    *Requirements Under 28 U.S.C. § 2254(d)(1)*

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (per curiam) (quoting

---

[5](...continued)

*See Williams v. Taylor*, 529 U.S. 362, 399, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The amendment "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners." *Id.*; *see also Bell v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("The [AEDPA] of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law.").

28 U.S.C. § 2254(d)(1)). The Supreme Court's opinion in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits. *See Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (discussing *Williams*); *Siers v. Weber*, 259 F.3d 969, 972-73 (8th Cir. 2001) (same).

Under *Williams*, a state court decision can be "contrary to" Supreme Court precedent in one of two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405-06; *see also Bell*, 535 U.S. at 693-94. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

An "unreasonable application" of Supreme Court precedent can also arise in one of two ways. The Supreme Court explained:

> First, a state-court decision involves an unreasonable application of [the Supreme Court's] precedent if the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the Supreme Court's] precedent if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407 (citation omitted). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involving an unreasonable application of

. . . clearly established federal law.'" *Id.* at 407-08; *see also Rompilla v. Beard*, 545 U.S. 374, 380, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005) (citations omitted) (discussing the "unreasonable application" prong of *Williams*); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (citations omitted) (same); *Bucklew*, 436 F.3d at 1016 (citations omitted) (same); *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) ("An 'unreasonable application' is one that, 'evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.' *Long v. Humphrey*, 184 F.3d 758, [760] (8th Cir. 1999)."). Additionally,

> [u]nder [28 U.S.C.] § 2254(d)(1)'s "unreasonable application" clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*.

*Williams*, 529 U.S. at 411 (emphasis added). Thus, the unreasonable application standard provides a "substantially higher threshold" for reversal than an incorrect standard. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007).

Applying these standards to the present case, the Court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa courts correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of O'Geary's claims. *See, e.g., Rousan v. Roper*, 436 F.3d 951, 955-56 (8th Cir. 2006) (discussing the applicable standards); *Bucklew*, 436 F.3d at 1016 (same); *Siers*, 259 F.3d at 973 (same).

### 2. *Requirements Under 28 U.S.C. § 2254(d)(2)*

Federal habeas corpus relief "may be granted on a claim adjudicated in state court if the state court proceeding 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) (quoting 28 U.S.C. § 2254(d)(2)).

The state court findings of fact are presumed to be correct. *Id.* (citing 28 U.S.C. § 2254(e)(1)).[6] The burden is on the petitioner to rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Accordingly, the Court's review presumes that the Iowa courts found the facts correctly unless O'Geary rebuts that presumption with clear and convincing evidence. *See id.*; *see also Middleton v. Roper*, 455 F.3d 838, 845 (8th Cir. 2006) ("[The court] bestow[s] a presumption of correctness on the factual findings of the state courts, and absent procedural error, [the court] may set such findings aside only if they are not fairly supported by the record." (quotation and citation omitted)); *Weaver*, 241 F.3d at 1030 ("[O]n habeas [corpus] review, we accord state trial courts broad latitude in determining questions of fact by virtue of the statutory presumption in favor of state court fact-findings."). "It bears repeating that even erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver*, 241 F.3d at 1030.

## B. Exhaustion Requirement

A petitioner, before obtaining federal habeas corpus review of his or her state confinement, must first "exhaust" his or her federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1);[7] *see also Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct.

---

[6] 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

[7] 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
> (A) the applicant has exhausted the remedies available in the

(continued...)

2546, 115 L. Ed. 2d 640 (1991) (citations omitted) ("[A] state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims."); *Clay v. Norris*, 485 F.3d 1037, 1039 (8th Cir. 2007) (same, quoting *Coleman*). A petitioner has exhausted his or her state remedies when he or she has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir. 1991); *see also* 28 U.S.C. § 2254(c).[8] In Iowa, exhaustion requires a petitioner to seek discretionary review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (concluding that the exhaustion doctrine requires a petitioner to seek discretionary review when that review is part of the ordinary appellate review procedure) (abrogating *Dolny v. Erickson*, 32 F.3d 381 (8th Cir. 1994)); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004) (reiterating that a

_____

[7](...continued)
　　　　courts of the State, or
　　　　(B)　　(i) there is an absence of available State corrective process; or
　　　　　　　(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[8] 28 U.S.C. § 2254(c) provides:
　　　An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

petitioner "must 'fairly present' his [or her] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.").

In order to satisfy the fair presentment component of the exhaustion requirement, a petitioner must: "'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Middleton*, 455 F.3d at 855 (quoting *Abdullah v. Groose*, 75 F.3d 408, 412 (8th Cir. 1996)); *see also Ashker*, 5 F.3d at 1179. A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the applicant's federal habeas corpus application have been properly raised in his or her state court proceedings. *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir. 1995); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994); *see also Harless*, 459 U.S. at 6 ("[T]he habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his [or her] federal habeas corpus claim."); *Picard*, 404 U.S. at 276 (an applicant is required to "present the state courts with the same claim he [or she] urges upon the federal courts."); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement").

"[The] exhaustion of state remedies requires that petitioners 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam) (quotations omitted; citing *Picard*, 404 U.S. at 275). If a petitioner has not fully presented his or her federal claims in state court, the claims are barred in federal court and must be dismissed, unless the applicant can either show both good cause for his or her failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of

justice. *Coleman*, 501 U.S. at 750; *Keithley*, 43 F.3d at 1218; *Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992); *Stanley v. Lockhart*, 941 F.2d 707, 709 (8th Cir. 1991).

## C. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington*, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Thus, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). A criminal defendant also has the right to the effective assistance of counsel on direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 482, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (citing *Penson v. Ohio*, 488 U.S. 75, 88-89, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988)); *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993) ("'A criminal defendant is entitled to effective assistance of counsel on first appeal as of right.' *Estes v. United States*, 883 F.2d 645, 648 (8th Cir. 1989)."). However, "[a]bsent some effect of challenged conduct on the reliability of the . . . process, the Sixth Amendment guarantee is generally not implicated." *Cronic*, 466 U.S. at 658 (citations omitted). "If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct 1, 4, 157 L. Ed. 2d 1 (2003) (quoting 28 U.S.C. § 2254(d)(1)).

In order to establish a claim of ineffective assistance of counsel, O'Geary must show that (1) the performance of his counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness,

and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link v. Luebbers*, 469 F.3d 1197, 1202 (8th Cir. 2006); *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006); *Middleton*, 455 F.3d at 846; *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009). If O'Geary makes an insufficient showing on one of the two components, the court is not required to address the other component. *Strickland*, 466 U.S. at 697; *see also Gianakos*, 560 F.3d at 821 ("We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies.") (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002)).

The performance inquiry requires a determination of whether counsel's assistance was "reasonable considering all of the circumstances." *Strickland*, 466 U.S. at 688; *see also Shelton v. Purkett*, 563 F.3d 404, 409 (8th Cir. 2009). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689; *see also Shelton*, 563 F.3d at 409. Therefore, a strong presumption exists that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.*; *see also Link*, 469 F.3d at 1202 (discussing the presumption); *Middleton*, 455 F.3d at 846 (same). Thus, "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (citation omitted).

Under the prejudice prong, O'Geary must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Gianakos*, 560 F.3d at 821. "A reasonable probability, is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Gianakos*, 560 F.3d at 821. In other words, "the question

is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. The court must consider the totality of the evidence when making the prejudice determination. *Id.*

## V. DISCUSSION

O'Geary presents the Court with four grounds in support of a writ of habeas corpus: (1) ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments; (2) newly discovered evidence after O'Geary's trial disclosed favorable concessions to Blough by the State which should have been disclosed at trial; (3) material facts have arisen which were not previously presented or heard at trial; and (4) the expert testimony in the case was unduly prejudicial. The Court will consider each of these grounds, in turn.

### A. Ineffective Assistance of Counsel

O'Geary argues that his trial counsel was ineffective in five ways: (1) failing to move for a mistrial after Detective Slezak's testimony regarding O'Geary's pre-arrest silence; (2) failing to object after the prosecutor asked O'Geary if he burned Mercedes' hand with a cigarette when the cause of the burn was not disputed; (3) failing to object to the prosecutor's closing argument statements that Mercedes' death was too horrible to describe to the jury; (4) failing to object when the prosecutor commented on the credibility of O'Geary's expert medical witnesses; and (5) failing to require Blough's live testimony at trial.

In order to succeed on an ineffective assistance of counsel claim, "the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. 365. O'Geary must establish that (1) the performance of his trial counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687; *see also Wiggins*, 539 U.S. at 521; *Link*, 469 F.3d at 1202; *Winfield*, 460 F.3d at

1033; *Middleton*, 455 F.3d at 846. If O'Geary makes an insufficient showing on one of the two components, the Court is not required to address the other component. *Strickland*, 466 U.S. at 697.

### 1. *Did Counsel Provide Ineffective Assistance by Failing to Request a Mistrial After Detective Slezak's Testimony?*

O'Geary contends that he was denied due process and a fair trial when the State's witness, Detective Slezak, testified that O'Geary obtained counsel prior to his arrest. The questioning at issue is:

> Q. Now, did you also make an attempt to contact the Defendant, Sean O'Geary?
>
> A. Yes, I did.
>
> Q. Were you able to talk to him directly?
>
> A. No. I was – I called his mother's residence and spoke with his mother, Nancy.
>
> Q. What were you told about being able to interview him any further?
> > [Counsel]: Excuse, me [sic] Your Honor. Calls for hearsay response.
> > [Court]: It's overruled. You may answer.
>
> A. I was told that he was being represented by Steve Jackson, and that any contact with Sean would first have to be approved by him.
> > [Counsel]: Your Honor, may I approach the bench?
> > [Court]: You may.

Trial Tr. vol. II, 731 (July 31, 1998). Once counsel approached the bench, the parties held a discussion off the record. *O'Geary v. State*, 2007 WL 3085698 at *9. During the sidebar conference, O'Geary's counsel raised a Fifth Amendment objection to Detective Slezak's statement regarding O'Geary's pre-arrest silence. *Id.* The Iowa District Court judge sustained the objection. *Id.* At that point, counsel made the decision to request that

the judge give the jury a cautionary instruction regarding the testimony instead of requesting a mistrial. *Id.* O'Geary asserts that he was denied effective assistance of counsel when his trial counsel failed to request a mistrial.

O'Geary argues that "[p]rohibition of evidence the accused 'lawyered up' is a logical and necessary extension of United States Supreme Court precedent."[9] He further contends that his trial counsel erred by not moving for a mistrial after the incident. He argues that the information is not harmless, because a jury would view O'Geary's having obtained counsel as indicative of his guilt. Finally, O'Geary contends that even though the court admonished the jury to disregard Slezak's answer, the prosecution accomplished their goal to convince the jury that O'Geary hired an attorney due to Mercedes' homicide.

The State first responds by contending that O'Geary has not pled a freestanding Fifth Amendment claim. Specifically it notes that O'Geary's grounds for petitioning for a writ of habeas corpus are: (1) ineffective assistance of counsel; (2) newly discovered evidence; and (3)-(4) expert witness claims. Next, the State contends that O'Geary did not properly exhaust this claim, because his application for further review to the Iowa Supreme Court did not contain a Fifth Amendment claim. Turning to the merits, the State argues that a Fifth Amendment violation did not occur, because O'Geary was not under arrest during the time to which Detective Slezak referred. The State further argues that even if a Fifth Amendment violation occurred, the admonishment to the jury to disregard the answer and an additional jury instruction about the issue remedied the problem.[10]

In support of O'Geary's contention that his trial counsel erred, he asks the Court to analyze whether Detective Slezak's testimony resulted in a violation of his Fifth Amendment Rights. To do so, the Court must determine the clearly established federal law pertaining to pre-arrest silence at the time of the state court's decision. *See Williams*,

---

[9] *See* Plaintiff's Brief at 20.

[10] *See* Respondent's Brief at 13-14, 20.

529 U.S. at 412; *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). Clearly established federal law refers to the holdings of the United States Supreme Court as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. If there is not a relevant Supreme Court holding for the state court to apply, then the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). In *Rodriguez v. Miller*, 537 F.3d 102 (2nd Cir. 2008), the Second Circuit Court of Appeals explained that *Carey v. Musladin* stands for the proposition that the Supreme Court's holdings should be read narrowly in habeas proceedings. *Id. See also House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) ("Supreme Court holdings – the exclusive touchstone for clearly established federal law – must be construed narrowly and consist only of something akin to on-point holdings.").

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . ." U.S. Const. amend. V. The Supreme Court interpreted the amendment in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In *Miranda*, the Supreme Court held that persons in custody have the right to remain silent, they must be informed of this right, and their silence after being read the *Miranda* warnings may not be used against them during trial. *Id.* at 444-45. The Supreme Court later held that a defendant's pre-arrest silence may be used to impeach his testimony. *Jenkins v. Anderson*, 447 U.S. 231, 240-41, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980). However, in *Jenkins*, the Supreme Court explicitly did not reach the issue of whether the Fifth Amendment would protect pre-arrest silence as substantive evidence at a trial. *Id.* at 236 n.2.

The Eighth Circuit Court of Appeals has addressed the issue of pre-arrest silence. *See United States v. York*, 830 F.2d 885 (8th Cir. 1987). In *York*, the defendant was convicted of a federal crime in federal court. *York*, 830 F.2d at 895. On appeal, the defendant argued that the prosecutor's closing argument comment that "never, never once

did [defendant] tell the police or FBI about this terrible thing . . ." violated his Fifth Amendment rights. *Id.* The Eighth Circuit reviewed the prosecutor's statements and found that, when taken in context, the prosecutor was actually discussing the defendant's pre-arrest silence. *Id.* The Eighth Circuit then held "that the comment on [defendant's] pre-arrest silence was not error, and the trial court's admonition cured any potential for jury confusion impinging upon [defendant's] exercise of his right to remain silent." *Id.* at 896. Similarly, in *United States v. Frazier*, 408 F.3d 1102 (8th Cir. 2005), the Eighth Circuit addressed post-arrest, pre-*Miranda* silence. The Eighth Circuit held that, because the defendant "was under no government-imposed compulsion to speak[,] . . . the use of [defendant's] silence in the government's case-in-chief as evidence of guilt did not violate his Fifth Amendment rights." *Id.* at 1111.

The Fourth Circuit Court of Appeals recently addressed this issue. *See Jones v. Trombley*, 2009 WL 152312 (6th Cir. 2009). In *Jones*, a jury convicted the defendant of first degree murder and of being a third-felony habitual offender. *Id.* at *1. After appealing, the defendant petitioned the federal district court for habeas relief. *Id.* The defendant claimed that "the prosecutor improperly elicited testimony indicating that [defendant] had remained silent when he was initially stopped by the police but before he was advised of his right to remain silent . . ." *Id.* Quoting the *Jones* district court, the Fourth Circuit noted that "[t]he Ninth, Fifth, and Eleventh Circuit Courts of Appeal have held that the prosecution may comment on the defendant's silence if it occurred before the time he was required to be given his *Miranda* warnings." *Id.* at *2. "However, the Sixth, Tenth, First, and Seventh Circuits have held that it is a violation of the defendant's Fifth Amendment right against self-incrimination for the prosecution to comment on a defendant's pre-*Miranda* silence as substantive evidence of guilt." *Id.* Due to the lack of a Supreme Court holding that is on-point for this issue and due to the split among the Circuit Courts of Appeal, the Fourth Circuit held that the state court did not unreasonably apply clearly established federal law. *Id.* at *3. In *Carey v. Musladin*, the United States

Supreme Court, ruling on a different ground for habeas relief, agreed that when there is not a relevant Supreme Court holding and the Circuit Courts of Appeal are split on an issue, a state court cannot have unreasonably applied clearly established federal law. *Carey*, 549 U.S. at 77.

The Court must inquire whether the Iowa courts reached a decision contrary to that reached by the United States Supreme Court on a question of law, or alternatively, whether the Iowa Courts correctly identified the applicable principles of federal law and then unreasonably applied that law to the facts of O'Geary's claim. *See, e.g., Rousan*, 436 F.3d at 955-56; *Bucklew*, 436 F.3d at 1016; *Siers v. Weber*, 259 F.3d at 973. In O'Geary's case, Detective Slezak mentioned that O'Geary had obtained an attorney shortly after Mercedes' death. *O'Geary v. State*, 2007 WL 3085698 at *9. Trial counsel immediately objected, and the court held a sidebar conversation about the issue. *Id.* Immediately after the sidebar, the Iowa District Court judge struck the answer and admonished the jury to disregard the testimony. *Id.* On direct appeal, the Iowa Court of Appeals found "[e]ven if we were to find the Fifth Amendment violation claimed, the [Iowa District Court's] prompt remedial action was sufficient to prevent any resulting prejudice." *State v. O'Geary*, 1999 WL 1255737 at *2. On post-conviction relief appeal, the Iowa Court of Appeals did not address the merits of the underlying Fifth Amendment violation. *O'Geary v. State*, 2007 WL 3085698 at *9. However, the Iowa Court of Appeals did find that trial counsel made a reasonable tactical decision which did not fall "below the standard demanded of a reasonably competent attorney." *Id.*

O'Geary has failed to show that the Iowa courts deprived him of his Fifth Amendment rights. He has further failed to show that the Iowa courts' decision was either contrary to, or an unreasonable application of, established federal law. *See, e.g., Rousan*, 436 F.3d at 955-56; *Bucklew*, 436 F.3d at 1016; *Siers v. Weber*, 259 F.3d at 973. In addition, even if a violation had occurred, the Iowa Court of Appeals found that the information about O'Geary's pre-arrest silence did not result in prejudice. O'Geary has

also failed to provide any authority or evidence for the proposition that his trial counsel's failure to request a mistrial fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably conclude that O'Geary's trial counsel did not provide deficient assistance. Accordingly, he is not entitled to relief on this ground.

### 2. Did Counsel Provide Ineffective Assistance by Failing to Object to the Line of Questioning About Mercedes' Burn?

O'Geary also contends that his counsel was ineffective when counsel failed to object to a line of questioning about Mercedes' burn. The questioning at issue is:

> Q. Isn't it true that a number of bad things happened to Sadie while you were alone with her?
>
> A. Yes.
>
> Q. For instance, the burn on her left hand, didn't that happen while you were alone with her?
>
> A. Yes.
>
> Q. And you told Jess that it was her grabbing a hot grate or something on the stove?
>
> A. In the stove, yes.
>
> Q. Did you ever use a cigarette to burn her?
>
> A. No, I did not.

Trial Tr. vol. IV, 1313-1314 (Aug. 5, 1998).

The Iowa Court of Appeals found:

> This one question was one of many questions asked in the midst of a long and arduous trial. In light of the evidence that O'Geary abused Mercedes by biting her hard enough to leave impressions of his teeth on her skin and spanking her hard

enough to leave welts on her buttocks, and the fact that O'Geary had the opportunity to explain the burn, we find it highly unlikely that this question had a significant prejudicial impact on this case. Accordingly, O'Geary has failed to prove that, but for his counsel's failure to lodge an objection to this question, the result of the trial would have been different.

*O'Geary v. State*, 2007 WL 3085698 at *9.

O'Geary has presented no evidence or authority in support of his argument that counsel's failure to object amounted to constitutionally deficient performance. He has not shown that counsel's performance fell below an objective standard of reasonableness. *See Kimmelman*, 477 U.S. at 381. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably apply *Strickland* when it concluded that O'Geary was not prejudiced by his trial counsel's failure to object to the prosecutor's line of questioning. Accordingly, O'Geary is not entitled to relief on this ground.

### 3.    Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument?

O'Geary asserts that his trial counsel was ineffective by failing to object at two points during the prosecutor's closing argument. First, O'Geary argues, his counsel should have objected to the prosecutor's statements regarding Mercedes' manner of death. Second, he also argues that his counsel should have objected when the prosecutor made negative remarks about his expert witnesses' credibility.

In *James v. Bowersox*, 187 F.3d 866 (8th Cir. 1999), the Eighth Circuit ruled on a similar case where a defendant convicted of murder petitioned the court for a writ of habeas corpus due to prosecutorial misconduct during closing arguments. The defendant in *James* also claimed ineffective assistance of counsel because his attorney did not object. *Id*. at 866. In its analysis, the Eighth Circuit pointed out that, regarding the alleged misconduct, both the defense counsel and the trial court were in a better position to judge the significance of the prosecutor's comments and their effect on the jury. *Id*. at 869. In

addition, "the trial court also has the power to intervene *sua sponte*, for example, with a criticism of the prosecutor or a cautionary instruction." *Id.* Due to "the strict due process standard of constitutional review, the deferential review mandated by AEDPA, and [its] less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial," the Eighth Circuit stated that habeas review is very limited. *Id.* Finally, the Eighth Circuit noted that "[f]ederal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Id.*

### a. Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument Statements Regarding Mercedes' Manner of Death?

The statements at issue are:

> The decision will be did she fall down the stairs in some accidental way or was she abused in some manner that is so hard to comprehend and so ugly that we really don't want to try to even describe it to you.

> You heard the debate about was the edema caused by this, was the edema caused by that. The edema was caused by a series of acts starting with something too horrible to imagine.

Trial Tr. vol. IV, 1618 & 1629 (Aug. 7, 1998).

The Iowa Court of Appeals found:

> O'Geary claims the prosecutor's statement in closing argument that Mercedes' fatal head injuries were inflicted, rather than accidental, constituted misconduct because it was the prosecutor's 'own testimony.' We find this claim meritless. O'Geary was charged with first-degree murder on the basis that the fatal injuries to Mercedes were inflicted by O'Geary. Testimony from multiple expert witnesses supported this charge. One expert witness testified this was 'obviously a case of non-accidental trauma.' The prosecutor had an evidentiary basis for this statement. O'Geary's trial counsel was not ineffective for failing to object.

*O'Geary v. State*, 2007 WL 3085698 at *8.

O'Geary does not point to any authority to support his contention that a reasonable trial judge would have *sua sponte* declared a mistrial in this case. *See James*, 187 F.3d at 869. He further does not point to any evidence that counsel's failure to object fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably conclude that O'Geary's trial counsel did not provide deficient assistance. Accordingly, O'Geary is not entitled to relief on this ground.

> ### b. Did Counsel Provide Ineffective Assistance by Failing to Object to the Prosecutor's Closing Argument Statements Regarding the Credibility of O'Geary's Expert Witnesses?

The statements at issue are:

> [Dr.] John Plunkett is unprincipled, he's unreliable, he's not qualified, he's a hack, he sells his testimony for a price, he's the worst doctor witness you could imagine because he'll say whatever it takes.

> Now, Dr. Stephens says [the contusions noted on Mercedes] . . . are really uninterrupted bruises caused by hitting, I believe by hitting the nosing on the stairs. That doesn't fit. It couldn't happen. It wouldn't be like that. At best it's speculation by people wanting to create an alternative or it's a lie, one of the two. It didn't happen that way.

Trial Tr. vol. IV, 1627 & 1675 (Aug. 7, 1998).

To support his claim, O'Geary asks this Court to consider the case *State v. Werts*, 677 N.W.2d 734 (Iowa 2004). In *Werts*, the Iowa Supreme Court affirmed an Iowa Court of Appeals decision reversing a district court murder conviction. *Id.* at 735. O'Geary points out that, in *Werts,* the Iowa Supreme Court condemned the prosecutor for questioning a defense expert witness about the witness's prior involvement with defense

attorneys and particularly those representing defendants charged with child murder.[11] While this is true, it is only one of a number of reasons supporting the *Werts* decision. In *Werts*, both courts also found misconduct when the prosecutor engaged in a long line of questioning during the defendant's cross-examination that played upon the passions of the jury. *Werts*, 677 N.W.2d at 739. They further found misconduct when the prosecutor, during closing arguments, ripped pages out of a baby book to emphasize the things that the victim would never be able to do. *Id.* Finally, both courts found that evidence of the defendant's previous acts of violence were improperly admitted which rose to the level of prejudice to warrant granting a new trial. *Id.* at 737-38. While the Iowa Supreme Court condemned the prosecutor's actions in *Werts*, it never actually stated they were a ground for reversal. Instead, the court merely ordered that the misconduct be avoided on retrial – a retrial which the court explicitly granted due to the improperly admitted evidence. *Id.* at 737-39. Therefore, *Werts* is distinguishable from O'Geary's case.

The Iowa Court of Appeals found that even though the prosecutor's statements were unprofessional and not becoming of an officer of the court, the conduct did not deprive the defendant of a fair trial. *O'Geary v. State*, 2007 WL 3085698 at *7. First, the Iowa Court of Appeals found that trial counsel's closing argument invited the prosecution's attack. *Id.* Second, the Iowa Court of Appeals found that the court instructed the jury that statements, arguments, questions, and comments by counsel are not evidence. *Id.* at *8. Third, the Iowa Court of Appeals found that "the comments made by the prosecutor were not so disparaging or pervasive as to prejudice [O'Geary's] defense, particularly when viewed in light of the substantial evidence of his guilt." *Id.* Finally, the Iowa Court of Appeals determined that O'Geary failed to establish a reasonable probability that the exclusion of the prosecutor's statements would have resulted in a different outcome to his case. *Id.*

---

[11] *See* Plaintiff's Brief at 31.

O'Geary does not point to any authority to support his contention that a reasonable trial judge would have *sua sponte* declared a mistrial in this case. *See James*, 187 F.3d at 869. He further does not point to any evidence that counsel's failure to object fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably conclude that O'Geary's trial counsel did not provide deficient assistance. Accordingly, O'Geary is not entitled to relief on this ground.

### 4. Did Counsel Provide Ineffective Assistance by Failing to Prevent the Court from Using Blough's Deposition in Place of Her Live Testimony?

O'Geary contends that his trial counsel was ineffective by not requiring Blough's presence at his trial. He further argues that his trial counsel was ineffective by not preventing the State from using incriminating portions of Blough's deposition during the in-chambers meeting held concerning the use of the deposition as evidence. Finally, O'Geary maintains that the in-chambers discussion without him and the admission of Blough's deposition resulted in substantial prejudice which denied him his Sixth Amendment right to confrontation.[12] In order to succeed on an ineffective assistance of counsel claim, O'Geary must establish that (1) the performance of his trial counsel was constitutionally deficient, which requires a showing that his counsel's performance fell below an objective standard of reasonableness, and (2) the deficiency in his counsel's performance resulted in prejudice to his defense. *Strickland*, 466 U.S. at 687.

In support of O'Geary's contention that his trial counsel erred, he asks the Court to analyze whether the trial court should have allowed Blough's deposition to be used in place of her live testimony. To do so, the Court must determine the clearly established

---

[12] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor . . ." U.S. Const., amend. VI.

federal law pertaining to pretrial testimony at the time of the state court's decision. *See Williams*, 529 U.S. at 412; *Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). O'Geary's trial took place in July and August of 1998. The Iowa Supreme Court affirmed the conviction on March 3, 2000. Thus, even though the United States Supreme Court overturned *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) in 2004 when it decided *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Court will analyze O'Geary's claim under the *Roberts* decision, as it was applicable at the time of the state court's decision. [13]

In *Roberts*, the Supreme Court set out a two part test for determining whether a hearsay statement will be constitutionally admissible at trial. First, the prosecution must "either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." *United States v. Dorian*, 803 F.2d 1439, 1446 (8th Cir. 1986) (quoting *Roberts*, 448 U.S. at 65-66). Second, the statement must bear adequate "indicia of reliability." *Dorian*, 803 F.2d at 1446 (quoting *Roberts*, 448 U.S. at 65-66). However, when the evidence falls "within a firmly rooted exception to the hearsay rule, reliability can be inferred; otherwise the evidence must be excluded 'absent a showing of particularized guarantees of trustworthiness.'" *Dorian*, 803 F.2d at 1446 (quoting *Roberts,* 448 U.S. at 66).

First, the Court must ask whether Blough was unavailable to testify at O'Geary's trial. *Dorian*, 803 F.2d at 1446. "It is generally recognized that the 'availability' of a witness depends as much on the production of his [or her] testimony as it does on his [or

_____

[13] "In *Crawford*, 'the Supreme court held a witness's out-of-court statements that are testimonial in nature are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine.'" *United States v. Honken*, 541 F.3d 1146 (8th Cir. 2008) (quoting *Middleton v. Roper*, 455 F.3d 838, 856 (8th Cir. 2006)). Had the Court been required to apply this test, the Court would find that Blough was unavailable and that O'Geary had the opportunity to examine Blough during her deposition.

her] presence in court. Testimony from a witness who has claimed a privilege is for all practical purposes just as inaccessible as if he [or she] were dead or out of the jurisdiction of the court." *Phillips v. Wyrick*, 558 F.2d 489, 494 (8th Cir. 1977). The State of Iowa is in agreement with the federal principle. *See State v. Kellogg*, 385 N.W.2d 558, 560 (Iowa 1986) ("A witness who has exercised a fifth amendment privilege is 'unavailable' for purposes of the confrontation clause.").

In this case, Blough moved to quash her subpoena to testify in O'Geary's trial, because she was a defendant in a child neglect case involving Mercedes' death. Blough informed the Iowa District Court that she intended to claim the Fifth Amendment privilege to nearly all questions if she was required to testify in the O'Geary trial. Thus, the Court finds that Blough was unavailable to testify at the time of O'Geary's trial. *See Dorian*, 803 F.2d at 1446; *see also Roberts*, 448 U.S. at 65-66.

Next, the Court must inquire whether Blough's deposition had adequate indicia of reliability. *Dorian*, 803 F.2d at 1446. When evidence falls "within a firmly rooted exception to the hearsay rule, reliability can be inferred[.]" *Dorian*, 803 F.2d at 1446 (quoting *Roberts*, 448 U.S. at 66). "Iowa Rule of Evidence 804(b)(1) is such a firmly rooted hearsay exception." *Cox v. Burger*, 398 F.3d 1025, 1029 (8th Cir. 2005). The rule provides:

> (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>> (1) Former testimony. Testimony given as a witness at another trial or hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Iowa Rule of Evidence 804(b)(1). Thus, it was not error for the trial court to use Blough's deposition in place of her live testimony, provided O'Geary had an opportunity to develop the testimony by direct, cross, or redirect examination. In this case, O'Geary's trial counsel performed Blough's direct examination during her deposition. Therefore, O'Geary had the opportunity to develop Blough's testimony. Because the use of Blough's testimony fell within a firmly rooted exception to the hearsay rule, the Court may infer its reliability. *See Dorian*, 803 F.2d at 1446; *Roberts*, 448 U.S. at 66.

The Iowa Court of Appeals found:

> O'Geary's trial counsel made the strategic decision to use Jessica as a witness for the defense. This was consistent with O'Geary's overall trial strategy to claim that there was a "really big bang" that could have been made by Mercedes falling the night before the injuries were discovered. Also, this deposition testimony contained Jessica's statement that she "[n]ever" thought O'Geary posed a danger to Mercedes.

> When the court quashed O'Geary's motion to subpoena Jessica, his trial counsel asked the court to allow Jessica's deposition testimony into evidence. The court ruled both parties would be allowed to present portions of the deposition testimony to the jury. Some discussion regarding what portions of the deposition testimony would be allowed into evidence occurred in chambers, without O'Geary. After these chamber discussions, the court reconvened, and O'Geary was present. At this time, his trial counsel successfully argued that certain portions of the deposition favorable to the State should be kept from the jury.

> O'Geary now claims his trial counsel was ineffective because entering portions of this deposition into evidence, without the benefit of cross-examination, denied him his right to compulsory process and his right to confront Jessica.

> We disagree. As noted above, the court ruled O'Geary could not subpoena Jessica as a live witness at trial. Trial counsel wanted to introduce several pieces of her deposition testimony

that were helpful to O'Geary's defense, so he made the strategic decision to request to use her deposition testimony in lieu of her live testimony.

"In deciding whether trial counsel's performance was deficient, we require more than a showing that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently." *Reese v. State*, 391 N.W.2d 719, 721 (Iowa Ct. App. 1986). Trial counsel made a strategic decision to use portions of Jessica's deposition testimony to bolster O'Geary's defense. Upon our review of the deposition testimony presented at trial, we find this was a reasonable decision, and we will not second-guess this strategy on appeal. We also find O'Geary has failed to prove how his counsel's decision prejudiced his case. We find no ineffective assistance here.

*O'Geary v. State*, 2007 WL 3085698 at *3-4.

O'Geary has failed to show that the Iowa District Court's use of Blough's deposition was either contrary to, or an unreasonable application of, established federal law. *See, e.g., Rousan*, 436 F.3d at 955-56; *Bucklew*, 436 F.3d at 1016; *Siers v. Weber*, 259 F.3d at 973. He has further failed to provide any authority or evidence for his proposition that his trial counsel's failure to object to the deposition fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Thus, applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that the Iowa Court of Appeals did not unreasonably conclude that O'Geary's trial counsel did not provide deficient assistance. Accordingly, he is not entitled to relief on this ground.

### B. Favorable Concessions to Blough

O'Geary's brief does not provide an argument for his proposition that the Court should grant him relief based on newly discovered evidence. The Court requested a brief on the merits in its Briefing Schedule Order dated April 1, 2008 (docket number 10). It stated that "[O'Geary] shall have to and including April 30, 2008 to file briefs and arguments herein on the merits." *Id.* However, O'Geary failed to comply with the

Court's order by not providing any argument on this issue in his merits brief. The Court "need not address complex constitutional issues that have not been adequately briefed." *Okruhlik v. Univ. of Ark. ex rel. May*, 255 F.3d 615, 622 n.2 (8th Cir. 2001). *See also Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 581 n.11 (M.D. La. 2007) (recognizing the principle that a court need not address an issue which was not adequately briefed in a case involving a petition for a writ of habeas corpus).

In the alternative, even if O'Geary had addressed the issue, upon review of the state court decisions, O'Geary would not have been entitled to relief. The Iowa Court of Appeals found:

> To demonstrate that newly discovered evidence warrants a new trial, O'Geary must show the evidence (1) was discovered after the verdict, (2) could not have been discovered earlier in the exercise of due diligence, (3) is material to the issues in the case and not merely cumulative and impeaching, and (4) would probably have changed the result of the trial. [*Whitsel v. State*, 525 N.W.2d 860, 863 (Iowa 1994).]

> O'Geary contends there is new evidence that Jessica Blough received favorable treatment for her role in this case. The alleged new evidence was that Jessica's bond in her separate case was reduced because the prosecution reduced one charge against her from a class B felony to a class C felony.

> While O'Geary contends this evidence was newly discovered because it was not known until after the verdict, he fails to present a persuasive reason why this evidence could not have been discovered prior to trial. The record indicates Jessica's bond reduction occurred nearly six months before O'Geary's trial. O'Geary's trial counsel was aware of the charges against Jessica, and he had access to her court file. There is no reason this information could not have been discovered prior to trial.

> Because O'Geary failed to prove why this evidence could not have been discovered prior to his trial, the postconviction court did not abuse its discretion when it denied his request for a new trial.

*O'Geary v. State*, 2007 WL 3085698 at *10-11.

The Eighth Circuit has set forth a similar test for determining whether a defendant should receive a new trial based on newly discovered evidence:

> a defendant must show "(1) that the evidence was not discovered until after the trial; (2) that due diligence would not have revealed the evidence; (3) that the evidence is not merely cumulative or impeaching; (4) that the evidence is material; and (5) that the evidence is such as to be likely to lead to acquittal."

*United States v. Coplen*, 565 F.3d 1094, 1096 (8th Cir. 2009) (quoting *United States v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001)). Because the Iowa Court of Appeals found that due diligence would have revealed the evidence, and applying the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that O'Geary should not be granted relief on this issue.

### C. Other Newly Discovered Evidence

Ground Three in O'Geary's petition for relief states:

> Under federal due process, Chapter 822.2(4), a state postconviction legislative remedy entitles a petitioner to the vacation of a conviction or sentence in the interest of justice whenever it is shown by Petitioner there exists material facts not previously presented or heard. (*Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 10 (1979); *Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202 (8th Cir. 2000) [sic].

Plaintiff's Petition at 16 (docket number 1). However, O'Geary has failed to address this issue in his merits brief. Therefore, if he is referring to evidence other than Blough's relationship with the State (discussed above) and expert testimony (discussed below), the Court is unaware of what the newly discovered evidence might be. In any event, the Court need not address an issue which was not adequately briefed. *See Okruhlik* 255 F.3d at 622 n.2; *Bibbins*, 489 F. Supp. 2d at, 581 n.11.

### D. Expert Testimony

Ground Four in O'Geary's petition for relief states:

> Defendant was denied his right to a fair trial when the Court
> admitted expert testimony which was unduly prejudicial and
> went to the ultimate issue of the case. (Direct appeal, Exhibit
> 1, Issue IV) The term "inflicted" used by State experts was
> highly prejudicial and had a definite legal meaning which was
> conclusory on the ultimate legal issue.

Plaintiff's Petition at 16-17 (docket number 1). O'Geary did not address this issue in his
brief submitted in response to the Briefing Schedule Order dated April 1, 2008 (docket
number 10). Therefore, the Court is not required to address the issue. *See Okruhlik* 255
F.3d at 622 n.2; *Bibbins*, 489 F. Supp. 2d at, 581 n.11.

In the alternative, even if O'Geary had addressed the issue, upon review of the state
court decisions, O'Geary would not have been entitled to relief. The Iowa Court of
Appeals found:

> O'Geary asks this court to reverse his conviction because, two
> years after his conviction, the Eighth Circuit Court of Appeals
> adopted a new standard of admissibility for medical opinion in
> federal court. *See Turner v. Iowa Fire Equip. Co.*, 229 F.3d
> 1202 (8th Cir. 2000). O'Geary asks this court to adopt this
> new standard of admissibility and reverse his conviction so he
> may be tried under this new standard. We find no reason for
> reversal here.

*O'Geary v. State*, 2007 WL 3085698 at *11.

In *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, (8th Cir. 2000), the Eighth
Circuit discussed how the *Daubert* factors[14] for expert testimony admissibility should

---

[14] The four *Daubert* factors are: "(1) whether the expert's methodology has been
tested; (2) whether the technique has been subjected to peer review and publication;
(3) whether the technique has a known or knowable rate of error; and (4) whether the
technique has been generally accepted in the proper scientific community." *Turner v.
Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207-08 (8th Cir. 2000) (citing *Daubert v. Merrell*
(continued...)

apply to a treating physician's opinion. *Id.* at 1208. In doing so, the Eighth Circuit differentiated between a treating physician's analysis, which focuses on treating a patient's resulting condition, and an expert's analysis, which determines the underlying cause of a patient's condition. *Id.*

The Court's inquiry in this case is whether the Iowa courts' decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As O'Geary has not briefed this issue as requested, he has provided no evidence to support his proposition that the trial court improperly applied the *Daubert* factors to the expert testimony in his case. Therefore, due to the deferential standard of review set forth in 28 U.S.C. § 2254(d)(1), the Court finds that O'Geary is not entitled to relief on this ground.

## VI. CERTIFICATE OF APPEALABILITY

In a habeas proceeding before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and FED. R. APP. P. 22(b). *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if an applicant has made a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 335-36; *Winfield*, 460 F.3d at 1040 (8th Cir. 2006); *Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006); *Williams v. Bruton*, 299 F.3d 981, 982 (8th Cir. 2002); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable

---

[14](...continued)
*Dow Pharm., Inc.* 509 U.S. 579, 593-94 (1993)).

jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Winfield*, 460 F.3d at 1040; *Cox v. Norris*, 133 F.3d at 569 (citation omitted); *see also Tennard v. Dretke,* 542 U.S. 274, 276, 124 S. Ct. 2562, 159 L. Ed. 2d (2004) (reiterating standard); *Miller-El*, 537 U.S. at 335-36 (same).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [applicant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the Court finds that O'Geary failed to make the requisite "substantial showing" with respect to the claims that he raised in his application pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Because there is no debatable question as to the resolution of this case, an appeal is not warranted. Accordingly, the Court recommends that a certificate of appealability pursuant to 28 U.S.C. § 2253 not be granted.

## VII. CONCLUSION

O'Geary is not entitled to relief pursuant to 28 U.S.C. § 2254. The Iowa courts' adjudication of O'Geary's claims neither resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law, nor resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented.

Accordingly, the Court recommends that O'Geary's application for a writ of habeas corpus be denied. The Court also recommends that a certificate of appealability be denied.

## VIII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **DENY** O'Geary's Petition for Writ of Habeas Corpus (docket number 1) and **DENY** a certificate of appealability.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.

DATED this 23rd day of July, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA